IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MICHAEL P. SWIERGOSZ, | ) | CASE NO. 3:15CV680 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| LASHANN EPPINGER,[1] | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Michael Swiergosz ("Petitioner" or "Swiergosz") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Swiergosz is detained at the Grafton Correctional Institution, having been found guilty by a Lucas County, Ohio, Court of Common Pleas jury of aggravated burglary, three counts of kidnapping, felonious assault, and two counts of rape, all with firearm specifications, and one count of having a firearm under a disability. *State v. Swiergosz*, Case No. CR09-1948 (Lucas Cty. Common Pleas Ct., filed February 4, 2010). At resentencing following appeal, the trial court sentenced Swiergosz to the following: four years in prison for aggravated burglary (Count 1), four years for kidnapping one victim (Count 2), four years for felonious assault (Count 3), six years for kidnapping the second victim (Count 4, merging the sentence with Count 5), eight years each on both counts of rape (Count 6 and 7), and two three-year terms on the firearm specifications. The remaining firearm specifications were merged. Doc. 5-1, pp. 155-156. The court ordered that the sentences for Counts 1 and 2 be served concurrently to each other but consecutively to all the remaining sentences, which also were to be served consecutively to each other, for a total prison term of 36 years. *Id.* The trial

---

[1] LaShann Eppinger is the Warden of the Grafton Correctional Institution, where Swiergosz is currently incarcerated. Thus, Warden Eppinger is the proper party Respondent, pursuant to Fed. Rule of Civil Procedure 25, because he is the person with the ability to produce the petitioner's body before the habeas court. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-435 (2004).

court ordered the 36 years to be served consecutively to the eight years Swiergosz was sentenced in two prior cases. Thus, Swiergosz was sentenced to an aggregate term of 44 years in prison. *Id*. at 154-156.

On April 7, 2015, Swiergosz filed his Petition for Writ of Habeas Corpus setting forth one ground for relief. Doc. 1, p. 6. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Swiergosz's sole ground for relief fails on the merits. Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A. State Court Action

#### 1. Underlying Facts

The following summary of underlying facts is taken from the opinion of the Lucas County Court of Appeals, Sixth Appellate District of Ohio:[2]

> {¶ 2} The core facts from the trial record are undisputed. In the early morning of April 28, 2009, Swiergosz broke into a friend's home in Wood County and stole two firearms. One was a Glock semi-automatic pistol loaded with a full magazine, and the other a revolver, later determined to be inoperable. He then drove to his wife's place of employment in the village of Ottawa Hills, a retirement community-home known as Sunset House. An acrimonious divorce was underway, and Swiergosz's wife, Barb, had recently left their home with the couple's four children. Swiergosz entered Sunset House armed with the Glock pistol and a zippered duffel bag containing a hatchet, three rolls of masking tape, scissors, a tire iron, and the revolver. He immediately went to the office of

---

[2] Swiergosz has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

Marilyn Sharkey, one of Barb's co-workers. Sharkey testified that Swiergosz brandished the Glock and told her he would not kill her if she cooperated. Then he ordered her to call Barb to the office. Hearing footsteps near the door, he reached for the tire iron.

{¶ 3} When Barb appeared Swiergosz struck her twice on the head with the tire iron, causing a scalp laceration that bled profusely. Sharkey fled the room as Barb began screaming, and though Barb also started to run, Swiergosz caught her and pulled her into another room. He closed the door and told her to remove her clothes. After she did so, he bound her hands behind her with the tape. From there Swiergosz moved her to a different room with a bed and a bathroom. He testified that he only wanted to talk, but after getting Barb on the bed he removed his clothes and unsuccessfully attempted intercourse. They then went into the bathroom. Swiergosz made Barb sit on the toilet, still bound, and engage briefly in oral sex. But he quickly returned her to the bed where, she testified, forcible intercourse occurred. Shortly afterward, Swiergosz contacted the police by cell phone.

{¶ 4} The record indicates that over 50 officers from three jurisdictions responded to Sunset House and its adjoining grounds. Once the officers determined that Swiergosz was armed and holding Barb hostage and had apparently barricaded himself in one of the rooms, they placed two nearby high schools on lock-down. The residents at Sunset House were evacuated, and additional police units were summoned, including a SWAT team. Although Swiergosz would occasionally speak by cell phone to a sergeant he knew from the Lucas County Sheriff's Office, he kept the officers at bay for approximately six hours. Eventually, Swiergosz released Barb and then surrendered without further incident.

{¶ 5} On May 8, 2009, the Lucas County Grand Jury returned a nine-count indictment against Swiergosz.[1] Before trial, a nolle prosequi was entered on one count of felony intimidation. On January 26, 2010, trial began on the remaining charges, and the jury heard two days of testimony from nine witnesses, including Swiergosz, who testified twice in his own defense. In his first direct testimony, Swiergosz described the estranged relationship with his wife and several incidents that occurred between them in the months preceding his arrival at Sunset House. He was aware that she had a protection order against him with a no-contact provision, but he went there anyway. In the ongoing divorce, he "felt that [his] children were being harmed" by her actions and that he "didn't have any other options." During cross-examination, he claimed he had not intended to hurt anyone with the weapons he brought into Sunset House; rather, he went there for the "singular purpose" of obtaining answers from his wife. He referred to the Glock as "an attention getter." He denied that Barb was ever frightened, insisting their intercourse had been consensual. He admitted hitting her with the tire iron "because [he] needed to talk to her [and] wasn't able to talk to her in any other way." He also admitted pleading guilty to an earlier felonious-assault charge involving her.[2] The jury found Swiergosz guilty of all the charges, and he was sentenced to an aggregate prison term of 44 years.

> [FN1] Following his indictment, a number of pretrial motions were filed, including a motion to suppress Swiergosz's statements to Toledo police officers. After a hearing, this motion was denied. Separate hearings were held to determine Swiergosz's mental competency and to assess the basis for his plea of not guilty

3

> by reason of insanity. After these hearings and a court-ordered evaluation, the trial court determined that he was competent to stand trial and failed to meet the legal criteria for insanity. None of these rulings are involved in this appeal.
>
> [FN2] On March 10, 2009, Swiergosz discharged a firearm twice at his wife during an altercation. On December 22, 2009, after pleading guilty to this offense, he was sentenced to a prison term of seven years. Separately, Swiergosz later pled guilty to burglary for the firearms taken from the Wood County residence. The common pleas court sentenced him to a one-year prison term.

*State v. Swiergosz*, 965 N.E.2d 1070, 1075-1076(Ohio Ct. App. March 12, 2012).

### 2. Procedural History

The May 2009 term of the Lucas County Grand Jury indicted Swiergosz on nine counts for the events occurring on April 28, 2009. Doc. 5-1, pp. 4-10. He was charged with aggravated burglary, R.C. § 2911.11(A)(2), three counts of kidnapping, R.C, § 2905.01(A)(2), R.C.§ 2901(A)(4), R.C. § 2905.01(A)(3) and (C), felonious assault, R.C. § 2903.11(A)(2), two counts of rape, R.C. § 2907.02(A)(2), and intimidation of a crime victim or witness, R.C. § 2921.04(B), all with firearm specifications. *Id*. He was also charged with one count of having a firearm under a disability, R.C. § 2923.13(A)(2). *Id*. Following a competency hearing, Swiergosz was found competent to stand trial and entered a plea of not guilty. Doc. 5-1, p. 11. The state dismissed the intimidation charge. Doc. 5-1, p. 12. The case proceeded to trial on January 26, 2010, and the jury found Swiergosz guilty on all counts. Doc. 5-1, pp. 13-14.

One month before Swiergosz's actions at the Sunset House, he was charged with felonious assault against his wife. *See State v. Swiergosz*, Case No. 09-1727 (Lucas County Court of Common Pleas), Doc. 5-1, p. 293.[3] He pleaded guilty to this charge on November 10, 2009. *Id*. Swiergosz was also charged in Wood County with burglary for breaking into the

---

[3] The docket of Case No. 09-1727 may be found at
http://lcapps.co.lucas.oh.us/onlinedockets/Docket.aspx?STYPE=1&PAR=CR200901727-000&STARTDATE=01/01/1900&ENDDATE=01/01/2100&PARTY=0&LCKEY=jL%2f7MWq2tOsf2HfWq3a%2few%3d%3d (last visited 10/11/2016).

4

home to steal the guns he used in the Sunset House attack. *See State v. Swiergosz*, Case No. 2009CR0403 (Wood County Court of Common Pleas).[4] On October 30, 2009, Swiergosz pleaded guilty to this charge. *Id*.

On December 21, 2009, the trial court in Wood County sentenced Swiergosz to one year in prison on the burglary charge. *Id*. On December 22, 2009, the Lucas County Court of Common Pleas sentenced him to four years for felonious assault and three years for the attendant firearm specification, for a total of seven years, to be served consecutively with the one-year sentenced received in the Wood County case (for a total of 8 years). *State v. Swiergosz*, Case No. 09-1727 (Lucas County Court of Common Pleas, filed December 22, 2009).

On February 8, 2010, the Lucas County Court of Common Pleas sentenced Swiergosz for the Sunset House convictions. The court sentenced him to four years each for aggravated burglary (Count 1), kidnapping Sharkey (Count 2), and felonious assault (Count 3); six years each for two counts of kidnapping Barb (Counts 4 and 5); eight years each for both rape counts (Counts 6 and 7); and three years for having weapons under a disability (Count 8). Doc. 5-1, pp. 15-16. The court ordered that the sentences in Counts 1, 2 and 8 be served concurrently with each other (for a total of 4 years); the sentences in Counts 4 and 5 be served concurrently with each other (for a total of 6 years), and that these separate groups of counts be served consecutively with each other (for a total of 10 years). *Id*. Counts 3, 6 and 7 were ordered to be served consecutively with each other (for a total of 20 years) and consecutive to the other counts (for a total of 30 years). *Id*. The trial court then ordered the 30 years to be served consecutively to the 8 years Swiergosz was sentenced in his other two criminal cases (for a total of 38 years) and sentenced Swiergosz to two three-year terms (for a total of six years) for the firearm

---

[4] The docket of Case No. 2009CR0403 may be found at
http://pub.clerkofcourt.co.wood.oh.us/eservices/?x=DL4FG62AhwF8K0XbDMB9uRYFr*bidROuCWponw4qb1ujr o6qh8xjWzscAxQspZchXq6FiwqyvJLi8AStYdXXWA (last visited 10/11/2016).

specifications, and merged the remaining firearm specifications, for an aggregate prison sentence of 44 years. *Id*.

### B. Direct Appeal

Swiergosz, through counsel, filed a Notice of Appeal from his conviction in both Lucas County cases. Doc. 5-1, pp. 20, 24. The Ohio Court of Appeals, *sua sponte*, consolidated the appeals. Doc. 5-1, p. 29. In his brief, Swiergosz raised the following four assignments of error:

> 1. Mr. Swiergosz was deprived of his right to a fair trial, guaranteed by the Constitutions of the United States and the State of Ohio, through prosecutorial misconduct.
>
> 2. Mr. Swiergosz was denied the effective assistance of counsel guaranteed by the 6th Amendment to the United State Constitution and Article 1 §10 of the Ohio constitution.
>
> 3. The trial court committed error when it failed to apply the appropriate allied-offenses test in determining whether Mr. Swiergosz's convictions merged.
>
> 4. The trial court committed error in failing to specify whether the sentence on Count 6 was to be served consecutively or concurrently.

Doc. 5-1, pp. 31-32. The Ohio Court of Appeals affirmed Swiergosz's convictions but, based on Swiergosz's third assignment of error, remanded the case back to the trial court for a merger analysis under the then-recently decided case of *State v. Johnson*, 942 N.E.2d 1061 (Ohio 2010). *Swiergosz*, 965 N.E.2d at 1082-1085. Swiergosz did not appeal the Ohio Court of Appeals' decision. The trial court's sentencing on remand is set forth below.

### C. Application for Reopening Appeal Pursuant to Rule 26(B)

On June 8, 2012, Swiergosz, *pro se*, filed an Application for Reopening Appeal pursuant to Ohio App. Rule 26(B). Doc. 5-1, p. 95. He raised the following assignments of error:

> 1. Appellate counsel was ineffective for failing to point out that count #2 kidnapping was a felony 2, not a felony 1.
>
> 2. Appellate counsel was ineffective for failing to point out that in count #1, aggravated burglary, the prosecution failed to present any evidence on certain required elements necessary to sustain the charge.

6

>3. Appellate counsel was ineffective for failing to point out that there were biased jurors impaneled for trial.

Doc. 5-1, pp. 98-104. On August 6, 2012, the Ohio Court of Appeals denied Swiergosz's application as meritless. Doc. 5-1, pp. 106-113. On September 7, 2012, Swiergosz filed a Delayed Application for Reconsideration (Doc. 114), which the Court of Appeals denied as untimely and frivolous (Doc. 5-1, p. 123-125).

On September 14, 2012, Swiergosz appealed to the Ohio Supreme Court. Doc. 5-1, p. 126. In his memorandum in support of jurisdiction, he raised the following propositions of law:

>1. Appellate counsel provides ineffective assistance by failing to point out that count two, kidnapping, was a felony two. Sixth & Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
>2. Appellate counsel provides ineffective assistance by failing to point out that in count one, aggravated burglary, the prosecution failed to present any evidence on certain elements necessary to sustain the charge. Sixth & Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
>3. Appellate counsel provides ineffective assistance by failing to point out that there were biased jurors impaneled for trial. Sixth & Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

Doc. 5-1, p. 128. On November 29, 2012, the Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question. Doc. 5-1, p.153.

**D. Re-sentencing**

On October 2, 2012, on remand from the Ohio Court of Appeals, the trial court resentenced Swiergosz to the following: four years in prison for aggravated burglary (Count 1), four years for kidnapping Sharkey (Count 2), four years for felonious assault (Count 3), six years for kidnapping Barb (Count 4), eight years each on both counts of rape (Count 6 and 7), and two

three-year terms on the firearm specifications and merged the remaining firearm specifications. Doc. 5-1, pp. 155-156.  The court ordered that the sentences for Counts 1 and 2 be served concurrently to each other but consecutively all the remaining sentences, which also were to be served consecutively to each other, for a total prison term of 36 years.  *Id*.  Again, the trial court added the eight years from the prior cases and the aggregate sentence remained 44 years.  *Id*. at 154.

### E. Direct Appeal of Re-sentencing

On October 16, 2012, Swiergosz, through new counsel, appealed to the Ohio Court of Appeals.  Doc. 5-1, p. 158.  In his brief, he raised the following assignments of error:

> 1. The Trial Court erred by not merging Count VI (Rape) with Count VII (Rape).
>
> 2. The Trial Court erred by not merging Count VI (Rape) with Count VII (Rape), whether merged together or not, with the three counts of Kidnapping, namely Count II, Count IV, and Count V.
>
> 3. The Trial Court erred by not merging Count I (Aggravated Burglary) with one or all of the remaining Counts II, III, IV, V, VI, VII, and/or VIII.
>
> 4. The Trial Court erred by not merging Count III (Felonious Assault) with Count VI (Rape) and/or with count VII (Rape), whether the latter are or are not merged with each other.
>
> 5. The Trial Court erred by not merging Counts II, IV, and or V with each other into one (or at most two) Kidnapping convictions.
>
> 6. The Trial Court violated Mr. Swiergosz' right to Trial by Jury, to Presentment to a Grand Jury, and to Proof Beyond a Reasonable Doubt, in violation of the Ohio Constitution and of the United States Constitution.

Doc. 5-1, p. 164.  On October 18, 2013, the Ohio Court of Appeals overruled Swiergosz's assignments of error and affirmed the judgment of the trial court.  Doc. 5-1, p. 236; *State v. Swiergosz*, 2013 WL 5728349 (Oh. Ct. App. Oct. 18, 2013).

On December 2, 2013, Swiergosz, through counsel, filed a notice of appeal with the Ohio

8

Supreme Court. Doc. 5-1, p. 250. In his memorandum in support of jurisdiction, he raised the same six issues he raised in his direct appeal of his re-sentencing. Doc. 5-1, p. 253. On March 12, 2014, the Ohio Supreme Court declined to accept jurisdiction of his appeal pursuant to S. Ct. Prac. R. 7.08(B)(4). Doc. 5-1, p. 292.

### F. Federal Habeas Petition

On April 8, 2015, Swiergosz, through counsel, filed his Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following sole ground for relief:

> **Ground One**: The Trial Court violated Mr. Swiergosz' (sic) right to Trial by Jury, to Presentment to a Grand Jury, and to Proof Beyond a Reasonable Doubt, in violation of the Ohio Constitution and of the United States Constitution.
>
> **Supporting Facts**: Ohio allows trial courts to decide questions of merger. The process is the challenge herein. Factually, however, Mr. Swiergosz was convicted and sentenced for several offenses that under Ohio law were the same offense, namely one rape that was treated as if two, the kidnappings necessary and tied to the rape, the aggravated burglary requiring these two as predicates, and felonious assaults formed solely by the rape act. The trial court was enabled to make unsupportable conclusions of fact because Ohio law allowed the prosecution to argue to a judge on essentially no standard of proof without due process for contested facts. There is nothing in the finding of the jury that establishes that these offenses were separate acts, committed "separately," or committed with a separate animus. The 8-count Indictment against Mr. Swiergosz involved one incident. Ignoring the legal principles of who makes what findings, burdens of production, burdens of proof, and the like, the prosecution story is relatively simple. Mr. Swiergosz entered his wife's place of business for the purpose of taking his wife hostage to rape her. During that act, he necessarily ordered a co-worker to leave them alone. During that act, he also took the time to hit his wife with a tire iron as a means of subduing her.

Doc. 1, p. 6. On August 19, 2016, Respondent filed a Return of Writ (Doc. 5) and Swiergosz filed a Traverse on August 25, 2016 (Doc. 6). In his Return of Writ, Respondent argues that Swiergosz's sole ground for relief is not cognizable and, alternatively, fails on the merits. Doc. 5, pp. 10-19.

### II. Law

A. **Standard of Review under AEDPA**

9

In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's

10

determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews,* 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington,* 562 U.S. at 103.

### III. Swiergosz's sole ground for relief fails on the merits

Swiergosz argues in his sole ground for relief that deciding what counts should merge at sentencing is a fact issue that a jury should decide, not a court, and that Ohio law providing that a court is to decide the merger question violates a defendant's due process rights. Doc. 6, pp. 10-26. He submits that this issue "is essentially an *Apprendi* issue," i.e., Ohio courts are engaging in unconstitutional factfinding. Doc. 6, p. 10.

The Ohio Court of Appeals considered this claim raised by Swiergosz in his direct appeal of his resentencing. After setting forth the facts previously recited by the Court of Appeals in Swiergosz's first direct appeal of his convictions, the Ohio Court of Appeals explained,

> Based on this incident, the jury found Swiergosz guilty of one count of aggravated burglary, three counts of kidnapping, one count of felonious assault, two counts of rape, and one count of having a weapon under disability, along with attendant firearm specifications for each count. At sentencing, the court merged all but two of the firearm specifications, but did not merge any other counts. On appeal, we affirmed the determination of Swiergosz's guilt, but vacated the sentences and remanded the matter to the trial court to conduct a merger analysis under the recent Ohio Supreme Court decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061.
>
> At the resentencing hearing, the state conceded that the count of having a weapon under disability (Count VIII) should merge with the remaining counts, and that the two counts of kidnapping pertaining to Barb (Counts IV and V) should merge, with the state electing to proceed to sentencing on Count IV. The state argued that the remaining counts were committed by separate acts and thus were not subject to merger.

11

Swiergosz, for his part, argued that conducting the merger analysis in this case was a violation of his constitutional rights because it was impossible from the indictment and the general verdict forms to determine what part of his conduct the jury found to be a violation of the law. As an example, Swiergosz pointed to the count of felonious assault (Count III). The jury verdict form referred to the crime as charged in the indictment, which simply parroted the language of the statute and required the jury to find that Swiergosz "did knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance." Swiergosz argued that multiple acts could have constituted the offense of felonious assault-holding Sharkey at gunpoint, striking Barb with the tire iron, or having forcible sexual intercourse with Barb-but it was impossible to know which act the jury found to have constituted the offense. Swiergosz contended that without clarification from the jury, the court necessarily had to apply what it believed to be the offending act when it conducted the merger analysis. However, the court's belief may or may not have been in accord with the jury's findings. Essentially, he concluded that the court, not the jury, would be deciding the factual circumstances of his guilt, and then utilizing those findings to determine whether the multiple offenses were committed by separate acts.

The trial court heard Swiergosz's argument, acknowledged the issue, but proceeded to find that the remaining counts not noted by the state were committed by separate acts and did not merge. Therefore, the trial court sentenced Swiergosz to four years in prison on the count of aggravated burglary (Count I), four years on the count of kidnapping Sharkey (Count II), four years on the count of felonious assault (Count III), six years on the first count of kidnapping Barb (Count IV), eight years on the first count of rape (Count VI), eight years on the second count of rape (Count VII), and six years on the firearm specifications. The court ordered that the sentences for Counts I and II be served concurrently to each other, but consecutively to the remaining sentences, which also were to be served consecutively to each other for a total prison term of 36 years. Finally, the court ordered the sentence to be served consecutively to sentences imposed in two other cases for an aggregate prison term of 44 years.

\*   \*   \*

We will address Swiergosz's sixth assignment of error first. In that assignment, Swiergosz reiterates the argument he presented to the trial court, namely that it is a violation of his constitutional rights for the trial court to determine the factual circumstances supporting his guilt for the purpose of conducting a merger analysis. We disagree with Swiergosz's argument for three reasons.

First, Swiergosz contends that the issue of whether offenses were committed by separate conduct or with separate animus is a question of fact that must be resolved by the jury. However, this view has been dismissed by the Supreme Court of Ohio in the context of determining that merger is a question of law, and is thus subject to de novo review:

> Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving

12

> of deference to a trial court: "[A] review of the evidence is more often than not vital to the resolution of a question of law. But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact. Nor does that consideration involve the court in weighing the evidence or passing upon its credibility." *State v. Williams*, 134 Ohio St.3d 482, 2012–Ohio–5699, 983 N.E.2d 1245, ¶ 25, quoting *O'Day v. Webb*, 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (1972).

Second, Swiergosz argues that it is unclear whether the burden of proving merger, or lack of merger, falls on the prosecution or the defense. He proposes that because the statutory default is to merge offenses, and because the prosecution would seem to be the party in position to argue the exception of "separate animus," the burden should be with the state. Assuming this is true, Swiergosz concludes that the law should require the state (1) to provide notice in the indictment or the bill of particulars of its intention to argue that the offenses were committed with separate animus or separate conduct, (2) to present the questions of separate animus and separate conduct to the jury, and (3) to prove separate animus and separate conduct beyond a reasonable doubt.

Contrary to Swiergosz's assumption, it is "[t]he defendant [that] bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act," not the state. (Emphasis added.) *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). Thus, it is incumbent on the defendant to request clarification of the specific conduct that the state believes constituted each crime charged in the indictment. To that end, it is well settled that although an indictment is sufficient where it tracks the language of a statute, "[a]n accused is not foreclosed from securing specificity of detail * * * for R.C. 2941.07 provides that upon a request for a bill of particulars, '* * * the prosecuting attorney shall furnish a bill of particulars setting up specifically the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense.'" *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). Notably, no request for a bill of particulars was made in this case.

Finally, it is evident from the trial transcript that the parties, and the jury, knew and understood which conduct allegedly constituted each crime. As to the felonious assault count, the state in its opening and closing statements described the count as arising from Swiergosz striking Barb over the head with the tire iron. Moreover, Swiergosz admitted on the witness stand that he committed felonious assault because he struck his wife. As to the kidnapping charges, the state again separately refers to kidnapping Sharkey and Barb, and the jury instructions also separately identify the victim in each count. Lastly, as to the rape charges, in addition to the state describing the oral sex and vaginal sex as the two separate bases for the two counts in its opening and closing statements, Swiergosz admitted that those were the two sex acts that took place. Therefore, during the trial there was no uncertainty as to the specific alleged conduct that supported each offense.

Accordingly, Swiergosz's sixth assignment of error is not well-taken.

*State v. Swiergosz*, 2013 WL 5728349, at *1-4, (Oh. Ct. App. Oct. 18, 2013).

*Apprendi v. New Jersey*, the case upon which Swiergosz relies on in support of his position, held that, except for the existence of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000); *see also Blakely v. Washington, 542 U.S. 296, 303–304 (2004)*. The Court in *Apprendi* specifically stated that its ruling did not remove all discretion from sentencing judges:

> nothing in this history [of sentencing proceedings] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case. *See, e.g., Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

530 U.S. at 483.

In *Apprendi*, the defendant, after firing several times into the house of an African-American family, pleaded guilty to three counts charged in the indictment: two counts of possession of a firearm for an unlawful purpose and one count of unlawful possession of an antipersonnel bomb. *Id.* at 469. The indictment did not include reference to New Jersey's hate crime statute and did not allege that Apprendi acted with a racially biased purpose. The trial court accepted Apprendi's guilty plea on the three counts and, thereafter, held an evidentiary hearing to determine whether Apprendi acted with racial bias when he committed the crimes. *Id. at 470-471*. The court found that Apprendi had, and sentenced him to an enhanced sentence under New Jersey's hate crime statute. *Id*. In *Blakely*, the defendant pleaded guilty to kidnapping his wife. 542 U.S. at 299. Washington state law provided that a trial court could impose a sentence beyond the statutory range if it found a compelling reason to justify an exceptional sentence. *Id*. The trial court found that Blakely's actions amounted to deliberate cruelty and, accordingly, imposed a sentence that went beyond the statutory maximum for

14

kidnapping. *Id*. at 300. In both cases, the United States Supreme Court held that the trial courts' imposition of enhanced sentences based on the trial courts' factfinding violated the Sixth Amendment right to a trial by jury. *Id*. at 303. The Court explained, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id*. (emphasis in original). And in *Alleyne v. United States*, 133 S.Ct. 2151 (2015), the Supreme Court, overruling prior precedent, applied the rule in *Apprendi* to a case in which the trial court makes a factual finding that increases the minimum statutory sentence; in Alleyne's case, the trial court found that he "brandished" a firearm whereas the jury found only that he "used or carried" a firearm.

Swiergosz's argument that the trial court's merger determination violated his right to due process pursuant to the rule announced in *Apprendi* is misplaced. First, the Ohio trial court did not make a finding of fact that increased the penalty beyond the statutory sentence for the crimes Swiergosz was convicted of. That the trial court did not *reduce* Swiergosz's sentence after it applied the law to the facts determined by the jury does not equate to the trial court *increasing* his sentence beyond or within the statutory range after a finding on additional facts, as was the case in *Apprendi*, *Blakely* and *Alleyne*.

Moreover, Swiergosz does not cite any relevant legal authority that *Apprendi* directs a finding that Ohio's law regarding merger is unconstitutional. In other words, he does not assert that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of United States Supreme Court precedent, as he is required to do to prevail in federal court on a habeas petition. 28 U.S.C. § 2254(d)(1). For the state Court of Appeals' decision in Swiergosz's case to be "contrary to" a Supreme Court holding, there must be a Supreme Court case that "confronts the specific question presented by this case." *Woods v. Donald*, 135 S.Ct. 1372, 1377 (2015) (internal quotation marks and citation omitted) (explaining that, because the Supreme

15

Court had never decided the specific question in that case, the Sixth Circuit erred in finding that the state court of appeals' decision was contrary to a Supreme Court holding). Swiergosz does not identify a Supreme Court case that has addressed the specific issue in this case and the undersigned is not aware of such a case. Nor does Swiergosz demonstrate that the state Court of Appeals' decision unreasonably applied clearly established federal law: "[W]here the precise contours of [a] right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Woods*, 135 S.Ct. at 1377 (citing *White v. Woodall*, 134 S.Ct. 1697, 1705 (2014) (internal quotation marks and citations omitted)). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White*, 134 S.Ct. at 1706. Again, there is no Supreme Court precedent establishing that Ohio's merger law, or others like it, offends the rule announced in *Apprendi*. Swiergosz, therefore, seeks a ruling that the Ohio Court of Appeals erred because it did not extend Supreme Court precedent to apply to his case. Under these circumstances this Court cannot provide habeas relief. *See id*. ("[T]his Court has never adopted the unreasonable-refusal-to-extend rule[.]"). Although a fact pattern need not be "identical" before a determination can be made that the state court unreasonably applied Supreme Court precedent, application of the precedent should be "so obvious" that there can be no "'fairminded disagreement' on the question." *Id*. (quoting *Harrington*, 562 U.S. at 103)). It cannot be said that the application of *Apprendi* to Swiergosz's case is so obvious that there can be no fairminded disagreement on the question.

  Finally, Swiergosz has not shown that the Ohio Court of Appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2). Although he complains about the trial court's merger

16

analysis, he does not allege that the Ohio Court of Appeals unreasonably determined the facts. Indeed, Swiergosz does not refer to the state Court of Appeals' decision anywhere in his Petition or Traverse. In short, he ignores the standard of review applicable in federal court on a federal habeas petition and instead makes arguments fit for de novo review on direct appeal. His sole ground for relief fails on the merits.

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Swiergosz's habeas Petition be **DENIED** because his sole ground for relief fails on the merits.

Dated: October 11, 2016

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).